```
           IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SEAN A. SOUELS,<br><br>        Petitioner,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 1:15-CV-07563 (JBS)<br><br>[Relates to Cr. No. 10-510-05 (JBS)]<br><br>**MEMORANDUM OPINION & ORDER** |

**SIMANDLE, District Judge:**

    Pro se petitioner Sean A. Souels ("Petitioner") brings this habeas corpus action pursuant to 28 U.S.C. § 2255 against Defendant United States of America, seeking to vacate, set aside, or correct his sentence after conviction of conspiracy to commit wire fraud, entered after Petitioner pled guilty to such a charge on September 4, 2014. [Docket Item 3 at 2.] Petitioner was subsequently sentenced on May 14, 2015 to a term of imprisonment for forty-six (46) months, supervised release of three years, and restitution in the total amount of $283,256.26 (consisting of $30,000.00 to be paid to K.P., a victim of the fraud, followed by $253,256.26 to West Coast Servicing, Inc., the successor to the original lender). Id. Petitioner sought to set aside his sentence on a variety of grounds. Id. at 5-16.

    Petitioner's amended petition [Docket Item 3] raised three grounds, essentially, as follows:

>    Ground One: "Violation of Mandatory Victims Restitution Act 1996"--asserting that amount of restitution to victims and of loss under U.S.S.G. § 2B1.1 were incorrectly computed for the fraudulent mortgage where the Court determined these figures by reducing the amount of the fraudulent loans by the amount obtained by the lender's successor upon resale of the real estate collateral. Petitioner argues that the mortgage lender agreed to a short sale, not a foreclosure, and that the short sale mea ns there was no loss and no victim of his crime. Petitioner asserts: "The District Court violated the Mandatory Victim's Restitution Act, by allowing K.P. and/or West Coast Financing [sic] to receive restitution when they are not owed any." (Id. at 6.)
>
>    Ground Two: "Illegal Sentence"--asserting that the defrauded lender's short sale of the underlying property yielded no loss for Sentencing Guidelines purposes because "the total mortgage loan was satisfied," and the 12-point loss enhancement pursuant to U.S.S.G. § 2B1.1(b) was improper. (Id. at 7.)
>
>    Ground Three: "Ineffective Assistance"--asserting that because the lender of the fraudulent loans reacquired the collateral real estate and sold it by short sale rather than foreclosure, counsel was ineffective in failing to object since, in Petitioner's view, the entire mortgage indebtedness was cancelled. (Id. at 9.)

This Court issued a Memorandum Opinion and Order (filed August 24, 2017) ruling that Petitioner's petition be dismissed for lack of subject matter jurisdiction as to Ground One and that it be denied on the merits as to Ground Two and Ground Three. [Docket Items 23 & 24.]

After reviewing the circumstances of Petitioner's fraud, the Court held that Ground One should be dismissed because an order for restitution is not normally reviewable under § 2255

because reducing or eliminating the restitution does not result in the petitioner's release from custody nor does it negate the underlying conviction. [Memorandum Opinion and Order, Docket Item 23 at 7.] The Court held, with respect to both Grounds Two and Three, that the loss or intended loss under U.S.S.G. § 2B1.1(b)(1) and Application Note 3(E)(ii) was properly computed; in this case, where the victim has recovered the fraudulent mortgage loan collateral (here, title to the real property) and then disposed of it by a reasonable sale, the loss amount is reduced by the amount recovered by the victim from the disposition. The Court rejected Petitioner's argument that the lender suffered no loss when it acquired the property back from the straw purchaser (K.P.) for $1,000 and cancelled her indebtedness, that the loss became zero. The Court agreed with the Government's position that this formulation provides a reasonable estimate of loss where the lender (Gateway Funding) sold this mortgage in a pool of loans to West Coast Servicing, which obtained title from the titled owner (K.P.) and resold the underlying collateral to recoup part of the loss. (Memorandum Opinion filed Aug. 24, 2017 at 4, citing Kramer Statement at Gov't Br., Ex. D, and Final PSR ¶ 95.) Accordingly, for reasons explained in the Memorandum Opinion, the loss was properly determined at sentencing as the difference between the outstanding amount of the fraudulent loans ($478,256.26) for

Unit 203, less the proceeds obtained by West Coast Servicing as Gateway's successor ($225,000.00), yielding a net loss of $253,256.26, causing a 12-level enhancement under U.S.S.G. § 2B1.1(b).

Petitioner subsequently filed the present motion pursuant to Rule 59(e), Fed. R. Civ. P., seeking reconsideration of that Memorandum Opinion and Order [Docket Item 25], along with Petitioner's Motion to Reopen pursuant to Rule 60, Fed. R. Civ. P., alleging fraud by the Government [Docket Item 28].[1]

Specifically, Petitioner argues upon reconsideration that this Court should vacate its Memorandum Opinion and Order of August 24, 2017 to correct manifest errors of law or fact and to present newly discovered and previously unavailable evidence. He challenges this Court's finding that it lacks jurisdiction under § 2255 to reduce or eliminate the restitution ordered as part of his sentencing. He alleges that the Court erroneously determined the amount of loss upon the fraudulent mortgage loans under U.S.S.G. § 2B1.1(b)(1), overlooking Petitioner's argument that the financial institution that made the loans allegedly sold the mortgage note to a successor institution at a substantial

---

[1] In the meantime, after filing his Rule 59(e) motion and before filing his Rule 60(b)(3) motion, Petitioner filed a Notice of Appeal [Docket Items 26 & 27]. Notwithstanding that appeal, this Court has jurisdiction to decide the pending motions, Fed. R. App. P. 4(a)(4).

4

discount, such that the amount of loss should be calculated only from the successor lender's cost of acquiring the mortgage less the amount the successor lender received when the property was sold, because the original lender's loss should not be counted. Thus, Petitioner seeks to set aside this Court's denial of his petition on Grounds Two and Three concerning the amount of loss calculation.

With regard to his Rule 60 motion to reopen the § 2255 denial, Petitioner invokes Rule 60(b)(3) and accuses the Government of fraud in misrepresenting that Souels's Criminal History Category (CHC) was III when it fact it was I. He alleges that "[I]n adjudicating the § 2255 motion this court relied upon the fraud that the defendant had a criminal history of 3 and not of 1," and he seeks reopening of the § 2255 motion for reconsideration by applying the accurate CHC of I. [Docket Item 28 at 2.]

The principal issues to be decided are:
(1) Whether the determination that § 2255 relief was unavailable regarding the amount of restitution to the victims of Petitioner's fraud overlooked controlling decisions;
(2) Whether reconsideration is warranted for the determination of the amount of "actual or intended loss" on the fraudulent mortgage loans of U.S.S.G.

5

§2B1.1(b) and Application Note 3(A)(ii) in denying

relief on Grounds Two and Three; and

(3) Whether Petitioner presents evidence of the

Government's fraud justifying reopening the § 2255

proceedings where the Government mistakenly argued

that Petitioner was in Criminal History Category III

rather than I, under the Sentencing Guidelines.

For the reasons that follow, Petitioner's Motion for Reconsideration under Rule 59(e) and Petitioner's Motion to Reopen under Rule 60(b)(3) will be denied. The Court finds as follows:

**1.** In this district, a Rule 59(e) motion to alter or amend judgment is reviewed under the same standard as a motion for reconsideration under L. Civ. R. 7.1(i). A party seeking reconsideration must set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its prior decision. L. Civ. R. 7.1(i). "As such, a party seeking reconsideration must satisfy a high burden, and must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice." <u>Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir.

1999); N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

**2.** Reconsideration has always been considered an "extraordinary remedy" and is "granted very sparingly." Grossberger v. Saldutti, 834 F. Supp. 2d 209, 216 (D.N.J. 2011) (internal quotations and citation omitted). A motion for reconsideration is an extremely limited procedural vehicle – it does "not provide the parties with an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor "may [it] be used to relitigate old matters, [or] to raise arguments or present evidence that could have been raised prior to the entry of judgment." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process. S.C. ex rel. C.C. v. Deptford Twp. Bd. of Educ., 248 F. Supp. 2d 368, 381 (D.N.J. 2003). Therefore, in order for reconsideration to be warranted, the party seeking reconsideration must specifically rely upon one of the qualifying bases, see L. Civ. R. 7.1(i), and not merely a recapitulation of prior cases and arguments, nor an expression of disagreement with the Court's earlier

decision. See Arista Records, Inc. v. Flea World, 356 F. Supp. 2d 411, 416 (D.N.J. 2005). Generally, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which the judgment was based; (2) to present newly-discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) an intervening change in the prevailing law. See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1; see also Harsco v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

3. Petitioner cites the first three grounds in his motion [Docket Item 25 at 2], directing the Court's attention to what he claims is "new and prevailing information received after the filing of the 2255 motion." Id. Namely, Petitioner cites the information in the Government's Brief of July 25, 2016 and the attached Kraemer Statement as being "new."

4. Petitioner argues, first, that the Court overlooked case law allowing for claims challenging restitution orders to be brought pursuant to 28 U.S.C. § 2255. For the following reasons, the Court, having attended to the allegedly overlooked case law, finds that the law and precedent of the Third Circuit does not support jurisdiction under § 2255 to review a restitution order, and declines to find in Petitioner's favor as to this argument.

**5.** Petitioner appears to look to the non-precedential opinion in Gardner v. Bledsoe, 415 F. App'x 384, 385-386 n.1 (3d Cir. 2011) for support, but the Court disagrees that this case presents support for Petitioner's position. In Gardner, the petitioner filed a § 2241 petition "attacking the sentencing court's restitution order." 415 F. App'x at 385. The Third Circuit affirmed the dismissal of the petition on the grounds that, while claims that the BOP exceeds its authority in setting a schedule for restitution payments are cognizable under § 2241, McGee v. Martinez, 627 F.3d 933, 936-37 (3d Cir. 2010), the petitioner's claim "challenge[d] the . . . order, not the BOP's execution of it[,]" and the District Court accordingly lacked jurisdiction to entertain such a claim under § 2241. Gardner, 415 F. App'x at 386. In a footnote, the court noted cases where other courts have held that "claims attacking restitution orders" are cognizable under § 2255, as well as cases where courts have found that they are not, concluding, "We express no opinion as to whether Gardner may challenge his restitution order through 28 U.S.C. § 2255 or via some other procedural mechanism in the sentencing court in North Carolina." Id. at 386 n.2.

**6.** The cases discussed in the Gardner footnote are the other cases cited by Petitioner in his Rule 59(e) motion; i.e., they were all considered and cited by the Third Circuit,

whereupon the Third Circuit expressly declined to express an opinion about whether a restitution order can be challenged under § 2255. Petitioner, however, omits citing the case cited by the Third Circuit wherein the Second Circuit ruled that "challenges to noncustodial punishments are not cognizable in a § 2255 petition even when joined with challenges to custody"), id. at 386 n.2 (citing Kaminski v. United States, 229 F.3d 84, 87-89 (2d Cir. 2003)).

7. In U.S. v. Kramer, the Ninth Circuit held that "§ 2255 is available only to defendants who are in custody and claiming the right to be released. It cannot be used solely to challenge a restitution order." 195 F.3d 1129, 1130 (9th Cir. 1999)(collecting cases). This is precisely contrary to what Souels mistakenly says this case says, namely, "courts [ruled] that attacking restitution are normally cognizant under 2255 motion. The court stated that persons must not only be in custody but claiming the right[] to be released." [Docket Item 25 at 4.] Kramer was also favorably cited by the Third Circuit in Easton v. Williamson, 267 F. App'x 116, 117-18 (3d Cir. 2008), wherein the court stated: "We disagree with the District Court's conclusion that Easton must necessarily raise his claim [challenging the failure of the sentencing court to follow the strictures of the MVRA] in a motion under 28 U.S.C. § 2255. Ordinarily, challenges to a restitution order are not cognizable

under § 2255." Id., citing Kramer, 195 F.3d at 1130 (emphasis added). The court stated: "We express no opinion as to whether Easton may challenge his restitution order through some other procedural mechanism in the sentencing court." Easton, 267 F. App'x at 118.

8.  Contrary dicta appear in two instances in the case law, but do not decide the point. In Matheny v. Morrison, the Eighth Circuit addressed the constitutional claim of a petitioner who argued that the BOP's payment scheme for collecting restitution "violate[d] Article III of the United States Constitution because the court has delegated its sentencing power to the BOP" and ruled that this claim "attacks the validity of the sentence" and "must be brought through a § 2255 claim in Robinson's sentencing district." 307 F.3d 709, 711 (8th Cir. 2002). However, the Eighth Circuit later moved away from this opinion, stating: "Significantly, this court did not address in Matheny whether a challenge to the restitution portion of the sentence was cognizable under section 2255, but simply put forth the more general proposition that claims attacking the validity of a sentence should be raised under section 2255 in the sentencing district. Accordingly, the portion of Matheny advanced by Shephard in support of her claim is mere obiter dictum." Shephard v. U.S., 735 F.3d 797, 798 (8th Cir. 2013). See also U.S. v. Shaw, 508 F. App'x 769, 772 (10th

Cir. 2013)(recognizing Matheny as one approach to allowing challenges to non-custodial aspects of sentences under § 2255, but comparing with other courts that have found no jurisdiction to entertain such challenges, and finding question "unsettled" in Tenth Circuit after declining to adopt Matheny approach).

9. Finally, Petitioner does cite one case that supports his attempt to attack the restitution order in a § 2255 petition. In Weinberger v. U.S., the Sixth Circuit expressly found that a petitioner's claim regarding a restitution order was cognizable under § 2255, contra Kramer, where those claims were coupled with a successful ineffective-assistance-of-counsel claim. 268 F.3d 346, 351-52 (6th Cir. 2001); id. at 351 n.1 (citing Ratliff v. U.S., 999 F.2d 1023, 1025 (6th Cir. 1993)(alleged ineffective assistance of counsel in failing to appeal restitution order, where award would have been subject to reversal on appeal, is cause to allow such a claim under § 2255)).

10. However, in the main, cases citing Weinberger have cited it as contrary authority and declined to allow such a claim. See, e.g., U.S. v. Trimble, 12 F. Supp. 3d 742, 746 (E.D.Pa. 2014)("a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is also not cognizable in a habeas petition because it does not seek release from custody. Indeed, almost every court of appeals to

confront this issue has held that a petitioner cannot bring an ineffective assistance of counsel claim under § 2255 to challenge an allegedly erroneous restitution order or fine. Shephard v. United States, 735 F.3d 797, 798 (8th Cir. 2013); Kaminski, 339 F.3d at 85 n.1; [U.S. v.] Thiele, 314 F.3d [399,] 402 [(9th Cir. 2002)]; Smullen[ v. U.S.], 94 F.3d [20,] 26 [(1st Cir. 1996)]; U.S. v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994). Contra Weinberger v. United States, 268 F.3d 346, 351 n.1 (6th Cir. 2001)"); Awe v. U.S., No. 15-8155 (JLL), 2017 WL 1157865, at *5 (D.N.J. Mar. 27, 2017)(citing Trimble, inter alia, for support for proposition that restitution may not be challenged under § 2255, even when coupled with IAC claim, contrary to Weinberger); Kolasinac v. U.S., No. 13-1397 (JLL), 2016 WL 1382145, at *5 (D.N.J. Apr. 7, 2016)(same).

**11.** Given the holdings of the Third Circuit in the non-precedential opinions of Easton and Gardner, and the clear preponderance of other courts' determinations, the Court finds once again that Petitioner's challenge to the restitution order, where a successful challenge would not question his conviction or reduce or end his custodial confinement, is not cognizable under § 2255; accordingly, the Court declines to alter its original holding [Docket Item 23 at 5-7], and Petitioner's Motion pursuant to Rule 59(e) as to this claim is denied. Where validity of the conviction and custody is not affected by a

determination of the alleged restitution ground, the Court lacks jurisdiction to determine whether the restitution award was calculated correctly on this § 2255 petition.[2]

**12.** Next, Petitioner claims that he was prevented from presenting certain information in his § 2255 petition because he did not receive this information until such time that it would have rendered the filing of his petition untimely and/or he received it after he filed his petition. [Docket Item 25 at 5.] Petitioner describes this "new information": "A. That West Coast was a successor lender and not the first. B. That West Coast purchased the note in a pool of mortgages for pennies on the dollar, as stated in the FD_302. C. That West Coast DID NOT pay $478,000.00 the unpaid balance it extended to KP, to acquire the note. D. That West Coast decided with KP on a deed in lieu of foreclosure, wherein KP received a windfall profit, not a short sale." Id. Petitioner submits that this information means that "the court's calculation as to [U.S.S.G. §] 2[B]1.1 for loss did not take into consideration that as a successor lender it pays much less to acquire a note[,]" that this "allowed a 12 point enhancement, contributing to an illegal sentence." Id. At the

---

[2] Thus, the Court does not address Petitioner's arguments that the lender's successor (West Coast Servicing, Inc.) and Petitioner's naïve, young congregant (K.P.) whom he admittedly induced to serve as a straw purchaser and whose personal account he invaded to take funds for his own benefit were not "victims" for purposes of restitution.

threshold, this information is not "new" since West Coast was known to be Gateway Funding's successor at the time of sentencing, and also because, as noted above and in the Court's Memorandum Opinion of August 24, 2017, the Government provided Petitioner with the FBI Form 302 as Exhibit D to its Opposition Brief on July 26, 2016 [Docket Item 14-4 in Civil Action No. 15-07563(JBS)]. If Petitioner deemed this material about West Coast Servicing's acquisition of the fraudulent mortgage and its disposition new or relevant, he could have addressed it in a reply while his § 2255 petition was under consideration, see Rule 5(d), Rules Governing Section 2255 Proceedings for the United States District Courts. A motion for reconsideration does not enable a losing party to raise arguments known to the parties that could have been raised, but were not, in the adjudication of the underlying order.

**13.** The crux of Petitioner's speculation is that West Coast Servicing lost less than the Court calculated, and that the loss suffered by Gateway Funding should somehow be disregarded in the loss calculation, that the Court used this erroneously high figure of total loss to calculate that Petitioner ought to receive a 12-point enhancement under U.S.S.G. § 2B1.1(b)(1), and that Petitioner's counsel was therefore constitutionally ineffective in not raising this issue. [Docket Item 25 at 4-8.]

**14.** Petitioner cites U.S. v. Howard, 784 F.3d 745, 750 (10th Cir. 2015) for the proposition that the measure of actual loss should be computed differently for a downstream lender rather than the original noteholder. [Docket Item 25 at 6.] However, the court in Howard found that that distinction is correct when "computing restitution" for a restitution order made pursuant to the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3663 et seq., but not when performing "the total-loss calculation under U.S.S.G. § 2B1.1[, which] does not depend on which lender in the chain of title of a mortgage note suffered what loss[.]" Howard, 784 F.3d at 750-51. Moreover, other Circuits have agreed that the total loss in a fraudulent mortgage case includes the losses suffered by the original lender and its successor that acquired the fraudulent mortgage. See U.S. v. Ritchie, 858 F.3d 201, 217 (4th Cir. 2017)(Bank of America purchased Countrywide Bank, original holder of the fraudulent mortgage "and, thereby, acquired all of Countrywide Bank's assets--including, as odd as it may sound, all rights to the fraudulently obtained loan. Bank of America is not a successor or downstream purchaser of Ritchie's loan. Bank of America is the successor to the defrauded entity, the sole remaining victim of Ritchie's illegal conduct, and the only entity with the legal right to receive the money that was lost as a result of Ritchie's crime."). The other cases Petitioner

cites [Docket Item 25 at 6-7] are likewise inapposite. While U.S. v. James, 592 F.3d 1109, 1115 (10th Cir. 2010) found that the district court erred in using the successor lenders' actual loss to calculate an enhancement under § 2B1.1, this was so because the district court also "explicitly found that 'the losses of those entities does not constitute reasonably foreseeable pecuniary harm.'" This finding was unchallenged on appeal and the court did not address its merits. Id. at 1115 n.3. That circumstance is not present here, and the reasoning is therefore unpersuasive. It was fully foreseeable to Souels that when he fraudulently enlisted K.P. to be the straw purchaser of Unit 203 knowing her to be of modest income, and when he certified to the lender that his church employed her in a high-paying, non-existent position that made her falsely appear capable of repaying the enormous loans, and when he conspired with others to do so, he was setting into motion a cascade of losses to both the lender and to its successor that could not be fully reckoned until the successor made reasonable disposition of the property. The precise amount which the successor West Coast Servicing paid to the initial lender Gateway Funding, which is unknown, is not material to the total loss calculation; whatever the transaction price in December, 2007, the total loss figure sustained by Gateway Funding and West Coast Servicing is a constant.

**15.** Petitioner has not pointed to any other evidence suggesting that the Court incorrectly calculated the enhancement under § 2B1.1 or overlooked any controlling or persuasive case law or any relevant evidence; the Court accordingly therefore declines to grant Petitioner's Motion for Reconsideration on this point, and again determines that counsel was not ineffective at sentencing for failing to advance this non-meritorious argument.

**16.** Petitioner next claims that the Court erred in "overlook[ing] the fact that the criminal history of defendant was not a 3 which contributed to 46 months being given." [Docket Item 25 at 8.] The Court notes that, in the previously issued Memorandum Opinion denying § 2255 relief, the Court does indeed state, as background information, that Petitioner's criminal history score was calculated at Category III [Docket Item 23 at 1]. The Court regrets the inadvertent error in that Memorandum Opinion. It appears that, at Petitioner's sentencing on May 14, 2015, the Court misspoke and initially stated that Petitioner would be considered with "Criminal History Category III." [Docket Number 1:10-cr-00510-05-JBS, Docket Item 349 at 24.] However, the Court was looking at the correct Guidelines range figure in the Sentencing Table for a Criminal History Category I, which was (at Offense Level 23) 46 to 57 months, as the Court correctly stated. Id. In the same hearing, notwithstanding this

error, Petitioner's counsel explicitly affirmed that petitioner was "a first time offender, at least in terms of Criminal History Category" (id. at 27), and the Court subsequently reaffirmed at sentencing its understanding that Souels was in Criminal History Category I and stated: "The first thing we did was compute the advisory Guideline range, and that range was determined by Offense Level 23 and Criminal History Category I. And for Offense Level 23 and Criminal History Category I the advisory Guideline range is 46 to 57 months of imprisonment." Id. at 68. Accordingly, Plaintiff's contention that the Court inaccurately assessed his criminal history when calculating his sentence lacks substantive merit.[3] In short, the Court again determines Souels was properly sentenced at Criminal History Category I.

**17.** Petitioner's Motion to Reopen [Docket Item 28] is premised upon the same erroneous assumption that the Court calculated Petitioner's Criminal History as Category III. [Docket Item 28 at 1, 2-3.] Petitioner is attempting to seize upon an inconsequential misstatement of the actual Guideline score that was in fact applied to his sentencing. While the

---

[3] Furthermore, if the Court at sentencing had incorrectly regarded his Criminal History Category as III, the resulting recommended Guidelines range would have been defined by TOC 23, CHC III, which would have been significantly greater (57 to 71 months of imprisonment) than the range the Court applied (46 to 57 months).

Court regrets the misstatement and the reiteration of the mistake in the previous Memorandum Opinion, Petitioner may rest assured that no fraud occurred and the Court in fact calculated his sentence using Criminal History Category I, which led to the advisory range of 46 to 57 months, as stated in the record again and again. Petitioner's Rule 60(b) motion is therefore lacking in merit as well.

    **18.** For the foregoing reasons, it is **ORDERED** that Petitioner's Motion for Reconsideration [Docket Item 25] shall be, and hereby is, **DENIED**.

    **19. IT IS FURTHER ORDERED** that Petitioner's Motion to Reopen [Docket Item 28] shall be, and hereby is, **DENIED**.


**July 19, 2018**                                         **s/ Jerome B. Simandle**
Date                                                               JEROME B. SIMANDLE
                                                                                     U.S. District Judge